# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILMA ONAFALUJO,** | : | CIVIL ACTION NO. 1:18-CV-408 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **D&K AUTO SALES & SERVICES, LLC,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Wilma Onafalujo ("Onafalujo") commenced this consumer protection action seeking statutory and actual damages arising from her purchase of a vehicle from defendant D&K Auto Sales & Services, LLC ("D&K Auto Sales"). Following entry of default against D&K Auto Sales, Onafalujo moves the court for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons that follow, we will grant the motion for default judgment.

## I.      Factual Background & Procedural History[1]

On June 1, 2017, Onafalujo visited defendant D&K Auto Sales, a used car dealership located in York, Pennsylvania. (Doc. 1 ¶¶ 8, 10; Doc. 27 ¶ 2). Onafalujo sought to purchase a vehicle for ordinary travel. (Doc. 1 ¶ 10). The owner of D&K Auto Sales directed Onafalujo to a used 2014 Mitsubishi Mirage. (Id. ¶ 11; Doc. 27

---

[1] The facts that follow are taken from Onafalujo's complaint (Doc. 1) and her sworn certification (Doc. 27) in support of her motion for default judgment.

¶ 3). According to Onafalujo, the owner represented that the Mitsubishi was "in top condition" and described it as "a good running car that would last." (Doc. 1 ¶ 12; Doc. 27 ¶ 3).

Onafalujo took the vehicle for a test drive during which she noticed that the vehicle "pulled to the right." (Doc. 1 ¶ 13; Doc. 27 ¶ 4). Onafalujo informed D&K Auto Sales' owner about this issue when she returned to the dealership, and the owner replied that the vehicle "just needed realignment" and that he would resolve the issue. (Doc. 1 ¶ 14; Doc. 27 ¶ 5). Onafalujo trusted the owner's statements and relied on them in deciding to purchase the vehicle on credit. (Doc. 1 ¶ 15; Doc. 27 ¶ 6). The stated price of the vehicle was $7,500.00 plus tax, tags, fees, and finance charges. (See Doc. 1 ¶ 15).

The parties executed a financing agreement which identified both the "amount financed" and "total amount financed" as $7,500.00. (Doc. 1-2 at 2). The agreement also identified the "total interest" amount as $817.50. (Id.) Under the agreement's terms, Onafalujo was to make installment payments of $350.00 on the third day of each month until the balance was paid in full. (Id.) The parties agreed that Onafalujo would return to collect the vehicle after the necessary repairs were made. (Doc. 1 ¶ 15). Onafalujo avers that, as part of the financing arrangement, D&K Auto Sales installed a GPS Disabler to allow the vehicle to be tracked and remotely disabled at D&K Auto Sales' election. (Id. ¶ 17).

Onafalujo returned to retrieve the vehicle approximately one week later. (Id. ¶ 21). Onafalujo alleges that, when she returned to the dealership, the owner

informed her "that they checked out the Mitsubishi and that it had no problems." (Id.)  Two weeks later, Onafalujo was driving the vehicle on the highway for the first time when it began to shake violently any time she exceeded a speed of 40 miles per hour.  (Id. ¶ 22; Doc. 27 ¶ 9).  When Onafalujo took the vehicle back to D&K Auto Sales and explained the issue, she was told that issues with the vehicle's tires caused the shaking.  (Doc. 1 ¶ 23; see Doc. 27 ¶ 11).  Onafalujo then arranged a private inspection which revealed that the vehicle had preexisting frame damage that affected its operation.  (Doc. 1 ¶ 24; see Doc. 27 ¶ 10).

Onafalujo informed D&K Auto Sales that she would not be making further monthly payments and that she intended to return the vehicle.  (Doc. 1 ¶ 26; see Doc. 27 ¶ 12).  D&K Auto Sales subsequently used the GPS Disabler to "shut down the car," rendering it inoperable.  (Doc. 1 ¶ 27; Doc. 27 ¶ 13).  D&K Auto Sales did not collect the vehicle for weeks, causing Onafalujo to accumulate multiple parking tickets.  (Doc. 1 ¶ 28; see also Doc. 27 ¶ 13).  D&K Auto Sales eventually repossessed the vehicle in late August 2017.  (Doc. 1 ¶ 29).

Onafalujo commenced this action on February 16, 2018, with the filing of a three-count complaint.  D&K Auto Sales filed an answer on April 3, 2018.  Five months later, counsel for D&K Auto Sales moved to withdraw, asserting that D&K Auto Sales had exceeded its retainer, had not responded to requests to bring its balance current, and was not cooperating in responding to discovery requests. (Doc. 17).  We granted the motion to withdraw by order dated September 17, 2018. Therein, we instructed D&K Auto Sales that a corporate entity cannot represent

3

itself in federal court and granted it 30 days in which to secure successor counsel. (Doc. 18). We admonished D&K Auto Sales that failure to obtain successor counsel may result in the entry of default judgment against it. (Id.)

One month later, we received an unsigned letter on D&K Auto Sales letterhead, sent via certified mail with a return receipt requested to D&K Auto Sales' principal place of business, stating: "To whom ever it may concern D&K Auto Sales and Services LLC, will represent themselves on the above mentioned case from here on out." (Doc. 19). On October 30, 2018, we entered an order construing D&K Auto Sales' correspondence as an indication that it had received the court's September 17, 2018 order, understood the consequences of proceeding without counsel, and intended to proceed with self-representation notwithstanding those consequences. (See Doc. 20). Our October 30, 2018 order directed the Clerk of Court to designate D&K Auto Sales as a *pro se* litigant and authorized Onafalujo to file an appropriate application for entry of default and default judgment. (Id.)

At Onafalujo's request, the Clerk of Court entered default against D&K Auto Sales on November 1, 2018. (See Docs. 21-22). Onafalujo filed a motion for default judgment and supporting brief on February 4, 2019. (Docs. 23-24). In the more than six months since D&K Auto Sales' former counsel withdrew, successor counsel has not entered an appearance on its behalf, nor has D&K Auto Sales otherwise responded to the entry of default or to Onafalujo's pending motion.

4

## II. Discussion

Federal Rule of Civil Procedure 55 governs default judgments. See FED. R. CIV. P. 55. Once a default has been entered, see FED. R. CIV. P. 55(a), the non-defaulting party may apply to the court for a default judgment, see FED. R. CIV. P. 55(b)(2). The court may take the facts in the operative pleading—except those pertaining to damages—to be true for purposes of resolving the motion for default judgment. See DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)); 10A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2688.1 (4th ed. 2018) (citing, *inter alia*, Comdyne I, Inc., 908 F.2d 1142).

A court reviewing a motion for default judgment must first ask "whether the unchallenged facts constitute a legitimate cause of action." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2688 (3d ed. 2013)). After conducting this threshold inquiry, the court must then decide whether to exercise its discretion and enter default judgment through consideration of three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to

culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).[2] We turn first to the merits of Onafalujo's respective causes of action.

## A. Merits

Onafalujo pleads three counts in her complaint: a claim for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f (Count I); a claim for unlawful repossession in violation of Pennsylvania's Uniform Commercial Code ("PUCC"), 13 PA. CONS. STAT. §§ 1101-9809 (Count II); and a claim for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),

---

[2] In Chamberlain, the panel cited to United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984), for the proposition that these "[t]hree factors "control whether a default judgment should be granted." Chamberlain, 210 F.3d at 164 (citing $55,518.05 in U.S. Currency, 728 F.2d at 195). That decision, however, and all other decisions cited therein were examining whether to *set aside* an entry of default or default judgment, not whether to *enter* default judgment. $55,518.05 in U.S. Currency, 728 F.2d at 195 (motion to set aside entry of default and default judgment) (citing Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 122 (3d Cir. 1983) (motion to set aside default judgment); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir. 1982) (same); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982) (motion to set aside entry of default)). The Chamberlain decision does not explicitly acknowledge that it is extending the "set-aside" factors to a new and different context nor does it express a rationale therefor. As one Third Circuit judge has observed, the actions of entering a default judgment and setting one aside are "clearly distinguishable," and the Chamberlain court "may have unwittingly imposed an unrealistic and misplaced burden on plaintiffs, and unduly constrained the discretion of district courts." Hill v. Williamsport Police Dep't, 69 F. App'x 49, 52-53 (3d Cir. 2003) (Rendell, J., concurring) (nonprecedential). We echo and fully agree with Judge Rendell's concerns. Common sense dictates that the burden of proffering a meritorious defense should fall upon the shoulders of a defendant who seeks to set aside a default; we see no justification for transposing that burden to a plaintiff seeking an entry of default judgment against a defendant who has failed to appear. Nonetheless, this court is bound by Chamberlain until and unless the Third Circuit revisits the decision *en banc*. Id. at 52 (majority opinion) (observing that the district court "of course had no choice" but to follow Chamberlain); see, e.g., GEICO v. Pennsauken Spine & Rehab P.C., No. 17-11727, 2018 WL 3727369, at *4 n.1 (D.N.J. Aug. 6, 2018).

6

73 PA. STAT. AND CONS. STAT. ANN. § 201-1 *et seq.* (Count III). Accepting Onafalujo's allegations as true, see DIRECTV, Inc., 431 F.3d at 165 n.6 (quoting Comdyne I, Inc., 908 F.2d at 1149), we conclude that Onafalujo has pled three viable causes of action.

### 1. *Count 1: Violation of the TILA*

The TILA mandates that creditors include certain disclosures in each consumer credit transaction. See 15 U.S.C. § 1638(a). Terms that must be disclosed include, *inter alia*, "amount financed," "finance charge," "annual percentage rate," "total of payments," and "total sale price." Id. § 1638(a)(2)(A), (3)-(7). Creditors are required by statute to employ this exact terminology, id., together with a descriptive explanation of each term, id. § 1638(a)(8). These terms "shall be disclosed clearly and conspicuously," with the terms "annual percentage rate" and "finance charge" being disclosed "more conspicuously than other terms." Id. § 1632(a). Creditors must also include a statement of the consumer's right to obtain, on request, "a written itemization of the amount financed." Id. § 1638(a)(2)(B). Congress has created a civil cause of action for creditors whose lenders fail to comply with statutory disclosure requirements. See id. § 1640(a).

Onafalujo has alleged, and supporting documentation confirms, that the consumer financing agreement between Onafalujo and D&K Auto Sales failed to comply with numerous of these provisions.[3] (See Doc. 1 ¶¶ 20, 35). The financing

---

[3] In an answer filed before counsel withdrew, D&K Auto Sales denied any allegation that the parties' agreement violated federal or state law but did not dispute the authenticity of the contract as attached to the complaint and indicated that the documents comprising the parties' agreement "speak for themselves." (Doc. 1 ¶ 20; Doc. 12 ¶ 20).

7

agreement does not include the terms "annual percentage rate" or "finance charge" at all, let alone "clearly and conspicuously." (Doc. 1-2 at 2); see 15 U.S.C. §§ 1632(a), 1638(a)(3)-(4). Nor does the agreement include a statement of Onafalujo's right to request a written itemization of the amount financed. (Doc. 1-2 at 2); see 15 U.S.C. § 1632(a)(2)(B). Onafalujo has adequately pled a cause of action for noncompliance with the TILA's disclosure requirements.

### 2. *Count II: Violation of the PUCC*

The PUCC authorizes a secured party, after default by a creditor, to "sell, lease, license or otherwise dispose of any or all of the collateral" securing the subject transaction. 13 PA. CONS. STAT. § 9610(a). The PUCC requires that all aspects of the disposition of collateral—to include "the method, manner, time, place and other terms"—be "commercially reasonable." Id. § 9610(b). The creditor must provide the debtor with detailed notice, prior to disposition, of its intent to dispose of the collateral. See id. §§ 9611, 9614 (incorporating id. § 9613(1)). The notice must, *inter alia*, identify the intended method of disposition, state that the creditor is entitled to an accounting of the unpaid indebtedness, and advise the creditor of certain information concerning his or her right to redeem the collateral. See id. §§ 9613(1), 9614(1) (incorporating id. § 9623). The PUCC provides statutory remedies for noncompliance with these provisions. See id. § 9625.

Onafalujo contends that the manner of disposition, specifically using GPS technology to disable the vehicle, was unreasonable in violation of section 9610(b) of the PUCC. We need not tarry with questions of reasonableness, because we find that Onafalujo has established a separate and more obvious PUCC violation, to wit:

D&K Auto Sales never provided the statutorily mandated, post-repossession notice of disposition. (Doc. 1 ¶¶ 30, 41). This noncompliance with sections 9611 and 9614 of the PUCC constitutes an independently actionable violation of the statute. Hence, Onafalujo has stated a viable claim under the PUCC.

### 3. *Count III: Violation of the UTPCPL*

Pennsylvania's UTPCPL makes it unlawful to engage in "unfair methods of competition" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 PA. STAT. AND CONS. STAT. ANN. § 201-3. Prohibited acts include, *inter alia*, "[r]epresenting that goods . . . have . . . characteristics . . . that they do not have," id. § 201-2(4)(v), "[r]epresenting that goods . . . are of a particular standard, quality or grade . . . if they are of another," id. § 201-2(4)(vii), and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," id. § 201-2(4)(xxi). The UTPCPL establishes a private cause of action for damages for "[a]ny person who purchases . . . goods . . . primarily for personal, family or household purposes" and suffers an "ascertainable loss" due to conduct made unlawful by the statute. Id. § 201-9.2(a).

In her complaint and sworn certification, Onafalujo states that when she visited D&K Auto Sales, she was ushered by the dealership's owner to the used 2014 Mitsubishi Mirage. (Doc. 1 ¶¶ 10-11; Doc. 27 ¶¶ 2-3). The dealership's owner assured Onafalujo during this first visit that the vehicle was "in top condition" and "a good running car that would last," and during a subsequent visit that it had been inspected and "had no problems." (Doc. 1 ¶¶ 12, 21; Doc. 27 ¶ 3). Onafalujo relied on these representations in deciding to purchase the vehicle. (Doc. 1 ¶¶ 15-16; Doc.

9

27 ¶ 6). Shortly thereafter, the vehicle began to shake violently when Onafalujo drove it on the highway. (See Doc. 1 ¶ 22; Doc. 27 ¶ 9). Although D&K Auto Sales insisted that the vehicle's tires caused this problem, (Doc. 1 ¶ 23; Doc. 27 ¶ 11), a private inspection revealed that the vehicle had preexisting frame damage, (Doc. 1 ¶ 24; Doc. 27 ¶ 10). On this record, we find that Onafalujo has adequately articulated a cause of action against D&K Auto Sales for misrepresenting the characteristics and quality of the 2014 Mitsubishi in violation of the UTPCPL.

### B.     **Chamberlain** Factors

We turn next to an assessment of the Chamberlain factors. Prejudice and culpability are readily established. We have explicitly instructed D&K Auto Sales that a corporate entity cannot represent itself in federal court and have granted D&K Auto Sales ample opportunity to secure new counsel. (Doc. 18). We warned D&K Auto Sales that failure to secure new counsel would result in entry of default judgment against it. (Id. at 2). D&K Auto Sales rejected this admonition and chose "to represent themselves . . . from here on out." (Doc. 19). In the nearly six months since we received D&K Auto Sales' letter, Onafalujo requested entry of default and moved for default judgment, all without an appearance by successor counsel or any other response from D&K Auto Sales. To delay entry of default judgment against D&K Auto Sales—an entity that has failed to comply with and explicitly rejected our instructions and our efforts to protect its interests—would unfairly prejudice Onafalujo. These same facts support a finding that D&K Auto Sales has engaged in (and indeed continues to engage in) culpable conduct.

We must also consider whether D&K Auto Sales has pled a meritorious defense. The existence of a meritorious defense is presumed if the "allegations of defendant's answer, if established on trial[,] would constitute a complete defense to the action." $55,518.05 in U.S. Currency, 728 F.2d at 195 (citations omitted). In an answer filed before its former counsel withdrew, D&K Auto Sales admits that it sold the 2014 Mitsubishi to Onafalujo, (see Doc. 12 ¶¶ 10, 12, 15), but denies all allegations concerning the circumstances of the sale or representations made as to the vehicle's quality, (see id. ¶¶ 12-14). D&K Auto Sales also asserts that Onafalujo purchased the vehicle "As Is," with "minimal warranty." (Id. ¶ 12). This assertion, if proven, may constitute a defense to Onafalujo's UTPCPL claim, but D&K Auto Sales' default prohibits the court from testing the defense on its merit. Moreover, other than a blanket denial of liability, D&K Auto Sales' answer offers no defense whatsoever to Onafalujo's claims under the TILA and the PUCC. We conclude that D&K Auto Sales has not offered a complete defense sufficient to preclude default judgment.

The court is mindful that default judgments are disfavored and that resolution of a dispute on its merits, wherever practicable, is strongly preferred. Farnese, 687 F.2d at 764. Through the deliberate choice not to obtain successor counsel, with full knowledge of the consequences, D&K Auto Sales has rendered merits review of this case impossible. Accordingly, we find that entry of default judgment is appropriate.

**C.     Damages**

A district court may conduct hearings before entering default judgment to determine the amount of damages. FED. R. CIV. P. 55(b)(2); <u>Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.</u>, 531 F. Supp. 2d 652, 657 (M.D. Pa. 2007) (Conner, J.) (citation omitted). When evidence of damages is unopposed and unambiguous, a hearing on the amount of damages is not required. <u>Id.</u> (citation omitted). Courts have found a hearing to be unnecessary in cases seeking statutory damages or in cases in which the plaintiff has adduced "sufficient documentary proof to establish the judgment amount." 10A WRIGHT & MILLER, *supra*, § 2688.1 (4th ed. 2018).

Onafalujo seeks damages in the amount of $1,635.00 for the TILA violation, $1,567.50 for the PUCC violation, and $4,200.00 for the UTPCPL violation. (Doc. 24 at 10-15). Onafalujo maintains that an evidentiary hearing is not needed and that damages in this matter should be awarded on the record as it presently stands. (<u>Id.</u> at 7, 13). Because Onafalujo has elected statutory damages on the TILA and PUCC claims, and the uncontroverted record evidence readily establishes actual damages under the UTPCPL, we find a hearing on damages to be unnecessary.

The TILA provides for statutory damages of "twice the amount of any finance charge in connection with the transaction" so long as that amount is "not less than $400 or greater than $4,000." 15 U.S.C. § 1640(a)(2)(A)(i), (iv). The TILA defines "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." <u>Id.</u> § 1605(a). It includes such items as interest charges, service or carrying charges, and loan or finder's fees. <u>Id.</u>

§ 1605(a)(1)-(6). The instant consumer financing agreement calculates the "total interest" at $817.50. (Doc. 1-2 at 2). Onafalujo is entitled to statutory damages of twice that amount, or $1,635.00, on her claim for violation of the TILA.

Under the PUCC, a debtor in a consumer goods transaction may recover statutory damages in "an amount not less than the credit service charge plus 10% of the principal amount of the obligation." 13 PA. CONS. STAT. § 9625(c)(2). As noted *supra*, the consumer financing agreement establishes that the credit service charge (*i.e.*, the interest charged) is $817.50. (Doc. 1-2 at 2). The agreement also establishes the principal amount of the obligation: $7,500.00. (Id.) Thus, on her PUCC claim, Onafalujo is entitled to recover $1,567.50—the sum of $817.50 (the credit service charge) and $750.00 (10% of $7,500.00).

Onafalujo seeks actual damages under the UTPCPL in the amount of $1,400.00, the sum paid to date toward the vehicle purchased from D&K Auto Sales. (Doc. 24 at 15; Doc. 27 ¶¶ 8, 15). This figure comprises a down payment of $700.00 and two installment payments of $350.00. (Doc. 27 ¶ 8). Onafalujo's complaint and certification adequately demonstrate that she was bamboozled into making these payments by D&K Auto Sales "as a result of the use or employment of a method, act or practice declared unlawful" under the UTPCPL, *viz.*: misrepresentations with respect to the characteristics and quality of the vehicle. See 73 PA. STAT. AND CONS. STAT. ANN. § 201-9.2(a). We have little difficulty concluding that the record supports an award of actual damages of $1,400.00 under the UTPCPL.

We reach a different result with respect to Onafalujo's request for treble damages. The UTPCPL authorizes a court to "in its discretion, award up to three

times the actual damages sustained." Id.  The Supreme Court of Pennsylvania has held that a court's "discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages." Schwartz v. Rockey, 932 A.2d 885, 557 (Pa. 2007).  The court added, however, that the discretion granted by the UTPCPL is not unbounded, and a plaintiff must generally establish "intentional or reckless, wrongful conduct" to invoke treble damages.  Id.

We find no basis to exercise that discretion here.  Assuming *arguendo* that Onafalujo advised D&K Auto Sales of a potential alignment issue on June 1, 2017, that fact alone is not sufficient to put D&K Auto Sales on notice of the underlying frame damage of which Onafalujo eventually complained.  Even if it were, we decline to infer from Onafalujo's speculation alone that D&K Auto Sales knew of this damage and intentionally or recklessly disregarded the risk of harm it posed to Onafalujo.  Accordingly, we will award Onafalujo the full suite of statutory and actual damages to which she is entitled but will deny her request for treble damages under the UTPCPL.

**D.    Attorneys' Fees & Costs**

Both the TILA and the UTPCPL contemplate an award of costs and reasonable attorney's fees to a prevailing plaintiff.  See 15 U.S.C. § 1640(a)(3); 73 PA. STAT. AND CONS. STAT. ANN. § 201-9.2(a).  Under the TILA, the award of costs and fees is mandatory, see 15 U.S.C. § 1640(a)(3); under the UTPCPL, whether to award costs and fees is subject to the court's discretion, see 73 PA. STAT. AND CONS. STAT. ANN. § 201-9.2(a).

Onafalujo seeks $9,405.50 in attorney's fees and $474.19 in costs. (Doc. 24 at 20-21). These amounts are substantiated in a certification submitted by Onafalujo's counsel. (See Doc. 24-2). In the Third Circuit, a district court may not *sua sponte* alter a requested fee award absent specific objection by the nonmoving party. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005) (citing Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989)). With no such objection here, we will award costs and attorney's fees in the amount requested by counsel.

### III. Conclusion

The court will grant Onafalujo's motion (Doc. 23) for default judgment as more specifically stated herein. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Date:　　April 8, 2019